**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

WINSTON LAWRENCE,                                                          :

                                          :       Case No.  14-cv-3616

                           Plaintiff,     :

                                            :

               v.                      :       **COMPLAINT**

                                            :

SOL G. ATLAS REALTY CO., INC.;         :

PETER FIDOS, in his official and         :       Jury Trial Demanded

individual capacities; and SANDRA ATLAS   :

BASS, in her official and individual capacities, :

                                            :

                           Defendants.  :

------------------------------------------------------------X

      Plaintiff, WINSTON LAWRENCE, by and through his attorneys, Goodstadt Law Group, PLLC, as and for his Complaint against Defendants SOL G. ATLAS REALTY CO., INC., PETER FIDOS, and SANDRA BASS, and hereby states and alleges as follows:

**PRELIMINARY STATEMENT**

      1.     This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their discriminatory treatment and harassment against Plaintiff due to his race and/or national origin, and unlawful retaliation against him after he complained on numerous occasions about such unlawful widespread discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL").

      2.     In addition, this action seeks monetary damages to redress Defendants Sol G. Atlas's and Fidos's unlawful retaliation against Plaintiff for exercising his statutory rights under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) ("FLSA") et seq. and New York Labor Law

§ 215 et seq.

3.      Defendants' discriminatory, retaliatory and otherwise unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII, Section 1981 and the FLSA.  Further, the Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant Sol G. Atlas Realty Co., Inc.'s headquarters are located within the Eastern District of New York, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

6.      Plaintiff Winston Lawrence is a West Indian/Black male (originally from Barbados) who resides in the State of New York, County of Queens.  From in or around April 1994 to the present, Mr. Lawrence has been employed by Defendant Sol G. Atlas Realty Co., Inc.  At all times relevant herein, Mr. Lawrence met the definition of an "employee" under all applicable statutes.

7.      Defendant Sol G. Atlas Realty Co, Inc. ("Sol G. Atlas" or the "Company") is a corporation organized and existing under the laws of the State of New York, with its headquarters located at 185 Great Neck Road, Great Neck, New York 11021.  Sol G. Atlas is a real estate agency and property management company that specializes in the rental and

management of residential apartments.  At all times relevant herein, Sol G. Atlas was an "employer" and "covered employer" under all relevant statutes.

8.     Defendant Peter Fidos is Caucasian/Polish-American male, who, at all relevant times was a Superintendent with Defendant Sol G. Atlas, and who, upon information and belief, resides in the State of New York, Nassau County.  At all relevant times herein, Defendant Fidos was Mr. Lawrence's direct supervisor and directly participated in the discriminatory, retaliatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was an "employer" and/or "covered employer" under all relevant statutes.

9.     Defendant Sandra Atlas Bass is the Chief Executive Officer of Sol G. Atlas, who, upon information and belief, resides in the State of New York, Nassau County.  At all relevant times herein, Defendant Bass directly participated in the discriminatory, retaliatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was an "employer" under all relevant statutes.

## ADMINISTRATIVE PROCEDURES

10.     On or about April 15, 2013, Mr. Lawrence filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  The Charge arises out of substantially the same facts alleged herein.

11.     On or about December 13, 2013, the EEOC issued a determination that there is reasonable cause to believe that Defendant Sol G. Atlas has discriminated against Mr. Lawrence on account of his race and against a class of similarly situated black employees because of their race.

12.     After an unsuccessful effort at conciliation, the EEOC issued a Notice of Right to

Sue, dated March 6, 2014.  This action was filed within 90 days of Mr. Lawrence's receipt of his

Notice of Right to Sue from the EEOC.

13.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

14.     Plaintiff Winston Lawrence is a West Indian/Black employee of Defendant Sol G.

Atlas.

15.     Sol G. Atlas is a real estate agency and property management company that

specializes in the rental and management of residential apartments.

16.     Mr. Lawrence has served Defendant Sol G. Atlas with distinction as a Porter,

currently assigned to one of Defendant Sol G. Atlas's buildings in the Schenk/Welwyn apartment

complex located at 12 Welwyn Road Great Neck, New York ("Schenk/Welwyn").  During his

employment, Mr. Lawrence has earned the respect, admiration and trust of the residents for

whom he provides his services.

## Mr. Lawrence's Employment at Sol G. Atlas

17.     Mr. Lawrence began his career with Sol G. Atlas in or around April 1994.  During

his 20-year tenure with the Company, Mr. Lawrence has enjoyed a strong reputation for

productivity among the tenants in his building, as well as among his colleagues.

18.     At all times relevant herein, Mr. Lawrence served as a Porter in one of the

buildings within Defendant's Schenk/Welwyn apartment complex.  As a Porter, Mr. Lawrence

was responsible for the overall maintenance and cleanliness of the interior and exterior of his

assigned building and grounds.

19.     Mr. Lawrence's performance and achievements during his 20 years of service for

Sol G. Atlas have been uniformly exemplary, and Mr. Lawrence has consistently transcended the

4

requirements of his position through his hard work and boundless enthusiasm for, and commitment to, his job and the residents that he serves.

20.     Unfortunately, Mr. Lawrence's stellar performance and achievements have been marred by Defendants' unlawful discrimination towards Mr. Lawrence because of his race and/or national origin.  And, when Mr. Lawrence mustered up the courage to complain about Defendants' unlawful misconduct, Defendants summarily dismissed Mr. Lawrence's complaints out of hand and instead engaged in a concerted effort to retaliate against him.

**Mr. Lawrence Falls Victim to Defendants' Discrimination and Racist Harassment**

21.     In or around July 2008, Defendant Peter Fidos, a Caucasian/Polish-American male, was hired as the superintendent at Sol G. Atlas's apartment complex in Great Neck.

22.     At that time, there were approximately six West Indian and/or Black porters, one Hispanic handyman and one Hispanic assistant superintendent.

23.     However, almost from the beginning of Defendant Fidos's employment with Defendant Sol G. Atlas, he engaged in a pattern of disparate treatment towards Mr. Lawrence and the other West Indian and/or Black employees in favor of the Caucasian and/or Polish-American employees.  Indeed, Defendant Fidos hired almost exclusively Caucasian and/or Polish-American employees.

24.     This is not surprising, as Defendant Fidos has verbalized his racist beliefs, telling Mr. Lawrence that, "95% of blacks are in prison and the other 5% are like [him], barely making it and did not finish college."

25.     Defendant Fidos also subjected Mr. Lawrence and the other West Indian and/or Black porters to unequal scrutiny, discipline, harassment, and other terms and conditions of employment because of their race and/or national origin.

26.     Indeed, Defendant Fidos's discriminatory treatment of the West Indian and/or Black employees was so severe that it caused at least two West Indian and/or Black porters to leave their positions with Defendant Sol G. Atlas, and almost all of the terminations in the Schenck/Welwyn apartment complex under Defendant Fidos's watch have been of West Indian and/or Black employees.

27.     By way of example only, Defendant Fidos threw himself a birthday party during working hours and invited the Caucasian/Polish-American employees, but excluded Mr. Lawrence and every other West Indian and/or Black porter.

28.     Defendant Fidos also directed the Caucasian/Polish-American porters not to speak with Mr. Lawrence and the other West Indian and/or Black porters.  Specifically, Arthur Lapinski, one of the Caucasian/Polish-American porters, explained to Mr. Lawrence that he should apply to transfer out of his assigned building in the Schenk/Welwyn apartment complex to another building further away from Defendant Fidos's office because Defendant Fidos does not like Mr. Lawrence because he is West Indian and/or Black.

29.     Defendant Fidos also treated Mr. Lawrence in a disparate manner as compared to the Caucasian/Polish-American porters in terms of disability pay.  Indeed, in or around February 2012 and April 2012, Mr. Lawrence had surgery on his finger, which required him to take his available sick time.  Notwithstanding company policy requiring Defendant Sol G. Atlas to pay Mr. Lawrence for his time out of work recovering from the surgery, Defendant Fidos refused to approve such payment.  Indeed, Mr. Lawrence has attempted to receive his disability pay from Lincoln Page, Defendant Sol G. Atlas's controller, on several occasions.  However, Mr. Lawrence has been told that Defendant Fidos would not approve such payment, and Mr. Lawrence still has not been paid his disability pay (or sick pay) to this day.

30.     This is in stark contrast to Defendant Fidos's treatment of the Caucasian/Polish-American porters whose requests for disability pay for their sick time are timely processed and approved.  By way of example only, in or around 2013, a Caucasian/Polish-American porter, Voytek Borycki, had surgery and was out of work for a month.  Upon information and belief, Mr. Borycki was paid his disability pay for such time, in compliance with Defendant Sol G. Atlas's policies.  This is in direct contrast to Defendants' treatment of Mr. Lawrence's request for disability pay.

31.     Defendant Fidos also disciplined Mr. Lawrence in a disparate manner as compared to the Caucasian/Polish-American employees.

32.     By way of example only, Mr. Lawrence has been "written up" on numerous occasions for alleged tardiness.  However, such allegations are patently false, and are in stark contrast with Defendant Fidos's treatment of similarly-situated Caucasian and/or Polish-American porters who have documented tardiness.

33.     Indeed, Mr. Lawrence has been "written up" by Defendant Fidos at least 23 times by Defendant Fidos for alleged tardiness and purported performance issues, and has been suspended, without pay, on at least three occasions, and docked pay, for such trumped up claims of tardiness and alleged performance issues.

34.     However, these alleged performance deficiencies and claims of tardiness are demonstrably false.

35.     By way of example only, Defendant Fidos wrote up Mr. Lawrence for allegedly failing to follow directions to shovel snow on January 13, 2011.  However, on that date, Mr. Lawrence was not even at work, having taken an authorized day off to take care of his passport in order to attend the funeral of his fiancé's mother.

36.     Similarly, Mr. Lawrence was suspended in or around October 2011 when the movers hired by a tenant placed a cigarette outpost behind the door so they could move the tenant's furniture out of the building.  Indeed, Mr. Lawrence and the tenant protested the suspension because Mr. Lawrence was not responsible for the cigarette outpost having been moved.  However, Defendant Fidos still suspended Mr. Lawrence and docked his pay.

37.     This is in direct contrast to Defendant Fidos's treatment of the Caucasian/Polish-American porters about whom Defendants Bass and Fidos have received complaints.

38.     By way of example only, at least one tenant of another building has written multiple letters, and provided pictures, of the Caucasian/Polish-American porter's failure to clean the interior and exterior of his building and shovel snow after a storm, while at the same time lauding Mr. Lawrence's performance in comparison to this Caucasian/Polish-American porter's lack of performance.  However, Defendants have not disciplined this Caucasian/Polish-American porter.

39.     Defendant Fidos also has suspended Mr. Lawrence for alleged tardiness. However, Mr. Lawrence was not tardy as suggested by Defendant Fidos's multiple write-ups.  In fact, in or around May 2014, Mr. Lapinski, one of the Caucasian/Polish-American porters, explicitly told Mr. Lawrence that Defendant Fidos explained that he set the time clock fast to make it appear that Mr. Lawrence arrived at work a few minutes late, and told Mr. Lapinski that the fast time clock "was not for the white workers, only the blacks."

40.     And, upon information and belief, the time records of certain Caucasian/Polish-American porters demonstrate that they have, on multiple occasions, "clocked in" late for work. Moreover, it is customary for Defendant Fidos to sit and chat with the Caucasian/Polish-American porters about non-work related matters when they arrive at work, during lunch and

8

past their allotted lunch breaks.  However, none of these employees were written up, disciplined or suspended for such tardiness.  This is true even though the documented evidence demonstrates they arrived even later than the purported time(s) for which Mr. Lawrence has been disciplined and suspended.

41.     This is not surprising, as the EEOC discovered, after "review[ing] documentation regarding the write-ups and suspensions issued by Mr. Fidos," that "the majority of the black employees have received suspensions, while the white employees have not."

42.     It also confirms Mr. Page's admission that Defendant Fidos wanted all of the Black and Hispanic employees terminated so he could replace them with Caucasian/Polish-American employees.

43.     Moreover, upon information and belief, residents of the Schenk/Welwyn apartment complex have submitted photographs and written complaints about the performance of certain Caucasian/Polish-American porters, none of whom were disciplined or suspended.  And, residents of the apartment complex have praised Mr. Lawrence's performance, and he has never received any complaints from any resident about his performance.

44.     Defendant Fidos also permits the Caucasian/Polish-American porters to leave early, without discipline, but does not permit Mr. Lawrence to leave early when necessary.

45.     Indeed, on or about June 25, 2012, Mr. Lawrence's fiancé was dying of pancreatic cancer and was rushed to Memorial Sloan Kettering Hospital.  After repeatedly but unsuccessfully trying to inform Defendant Fidos by two way walkie-talkie that he needed to leave, Mr. Lawrence left to meet his fiancé at the hospital.  Defendant Fidos docked Mr. Lawrence's pay for that day.

46.     Similarly, Defendant Fidos docked Mr. Lawrence two hours' pay when he

attended the memorial service for his fiancé after her death.

47.     However, Defendant Fidos permits two Caucasian /Polish-American porters to leave an hour early two days per week to pick up their children without consequence and without requiring them to make up the lost hours.

48.     Defendant Fidos's adverse treatment of West Indian and/or Black employees did not end with the porters.  Indeed, when a private contractor who performed work on the buildings had three West Indian and/or Black employees, Defendant Fidos gave them a hard time and refused to give additional work to that contractor because he had Black employees perform the services in the buildings.  It was not until the contractor agreed to advertise positions in a local Polish newspaper and on the internet – drafted in Polish by Defendant Fidos – and hire Caucasian/Polish-American employees that Defendant Fidos agreed to hire such contractor for additional services.

**Mr. Lawrence is Subjected to Unlawful Retaliation**

49.     Unable to withstand the daily scrutiny and racist treatment, Mr. Lawrence complained to Defendant Bass on multiple occasions.  However, rather than addressing the discriminatory treatment and harassing environment, Defendant Bass turned a blind eye and permitted Defendant Fidos to continue with his discriminatory treatment unabated.  Indeed, Defendant Bass has condoned Defendant Fidos's unlawful discriminatory treatment of Mr. Lawrence and the other West Indian and/or Black porters.

50.     Indeed, when Mr. Lawrence pointed out to Defendant Bass that Defendant Fidos has treated him differently than the Caucasian/Polish-American porters and that he has terminated and/or caused many of the other Black porters to quit, she responded that one of the terminated Black porters "was too old for the job and needed to go."

51.     Not only did Defendant Bass fail to take any corrective action against Defendant Fidos for his documented disparate treatment of Mr. Lawrence and the other West Indian and/or Black porters, but she also let him increase his unlawful mistreatment with impunity.

52.     Indeed, after Mr. Lawrence raised his complaints with Defendant Bass about Defendant Fidos's discriminatory mistreatment, the unlawful adverse treatment became worse in response to such complaints.

53.     By way of example only, the baseless write-ups became more frequent.

54.     In addition, Mr. Lawrence has been suspended, docked pay and threatened with termination by Defendant Fidos.

55.     After not receiving any relief from his complaints to Defendant Bass, Mr. Lawrence filed his charge of discrimination with the EEOC on or about April 15, 2013.

56.     However, Defendants did not take the charge or the EEOC's investigation seriously.

57.     Indeed, Mr. Lapinski told Mr. Lawrence that Mr. Page (controller) instructed him – under the threat of losing overtime – to lie to the EEOC investigator during the investigation into Mr. Lawrence's charge of discrimination because they "wanted to build a good case against [Mr. Lawrence] and get rid of him."

58.     And, notwithstanding the fact that the EEOC determined that there is reasonable cause to believe that Defendant Sol G. Atlas has discriminated against Mr. Lawrence on account of his race and against a class of similarly situated black employees because of their race, Defendants have only increased their unlawful mistreatment of Mr. Lawrence.

59.     Indeed, as set forth above, Defendant Fidos has set the time clock a few minutes fast to create the false appearance the Mr. Lawrence clocks in late and attempt to force the

termination of his employment.  And, Defendant Fidos has written up Mr. Lawrence on several occasions and has threatened terminating his employment on these trumped up charges of tardiness.

60.     Defendants have brazenly retaliated against Mr. Lawrence in violation of Federal and New York State anti-discrimination and anti-retaliation statutes.

61.     Defendants' discriminatory, harassing, retaliatory and other unlawful conduct was intentional, done with malice and/or showed a deliberate, willful and wanton disregard for Mr. Lawrence and his civil rights in violation of Federal and New York State human rights laws.

62.     As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Mr. Lawrence has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits. Mr. Lawrence also has suffered irreparable damage to his personal and professional reputations and career.

63.     As a direct and proximate result of the foregoing discriminatory and retaliatory acts, Mr. Lawrence also has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering.

**Defendants Sol G. Atlas and Fidos Retaliate Against Mr. Lawrence**

64.     In 2011, the United States Department of Labor Wage and Hour Division ("DOL") investigated Defendant Sol G. Atlas's failure to pay its employees, including Mr. Lawrence and the other porters, overtime pay in compliance with the Fair Labor Standards Act. Mr. Lawrence directly participated in the investigation by, among other things, providing

information to the investigator.

65.     After its investigation, the DOL concluded that Defendant Sol G. Atlas failed to properly pay Mr. Lawrence and the other porters appropriate overtime payments.

66.     As a result, the DOL ordered Defendant Sol G. Atlas to pay its affected employees, including Mr. Lawrence, back wages for the uncompensated overtime.

67.     After Defendant Sol G. Atlas issued the appropriate overtime payments to its porters, including Mr. Lawrence, Defendant Fidos held several meetings, during which he threatened Mr. Lawrence and the other porters with termination if they cashed their overtime checks.

68.     Indeed, Defendant Fidos explained that cashing such checks – which were directed to be paid by the DOL – would be tantamount to stealing from Defendant Bass because he believed that the DOL was wrong.  In fact, Defendant Fidos directed the employees to shred their overtime checks.

69.     However, Mr. Lawrence was the only employee who refused Defendant Fidos's unlawful demand notwithstanding his continued intimidation.

70.     In response to Mr. Lawrence's opposition to Defendant Fidos's unlawful threats, Defendant Lawrence was ostracized, further threatened and exposed to other acts of unlawful retaliation, including, but not limited to, additional "write ups" and increased scrutiny.

71.     This unlawful retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful and wanton disregard for Mr. Lawrence and his rights in violation of the FLSA and New York Labor Law.

72.     As a direct and proximate result of such unlawful retaliation (including the threats of termination), Mr. Lawrence has suffered, and continues to suffer, mental anguish and

emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Section 1981)

73.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 72, inclusive, as if fully set forth herein.

74.     Defendants have discriminated against and harassed Plaintiff on the basis of his race, color and/or national origin in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are not West Indian and/or Black, including, but not limited to, subjecting him to disparate working conditions, discipline and pay, and denying him the opportunity to work in an employment environment free of unlawful discrimination and harassment because he is West Indian and/or Black.

75.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

76.     As a direct and proximate result of Defendants' unlawful discriminatory and harassing conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

77.     Defendants' unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure

14

Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**

**(Retaliation in Violation of Section 1981)**

78.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.    Defendants have violated Section 1981 by subjecting Mr. Lawrence to unlawful retaliation for his complaints of and opposition to Defendants' discriminatory, harassing and retaliatory practices enumerated above.

80.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

81.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

82.    Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Discrimination and Harassment in Violation of Title VII Against Defendant Sol G. Atlas)**

83.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 82, inclusive, as if fully set forth herein.

84.     Defendant Sol G. Atlas has discriminated against and harassed Plaintiff on the basis of his race, color and/or national origin in violation of Title VII by denying him the same terms and conditions of employment available to employees who are not West Indian and/or Black, including, but not limited to, subjecting him to disparate working conditions, discipline and pay, and denying him the opportunity to work in an employment environment free of unlawful discrimination and harassment because he is West Indian and/or Black.

85.     Defendant Sol G. Atlas has discriminated against Mr. Lawrence in violation of Title VII by, among other things, creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, widespread racism in the workplace that resulted in a material detriment to the terms and conditions of Mr. Lawrence's employment.

86.     As a direct and proximate result of Sol G. Atlas's unlawful and discriminatory conduct in violation of Title VII, Mr. Lawrence has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

87.     As a direct and proximate result of Defendant Sol G. Atlas's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

88.     Defendant Sol G. Atlas's unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII Against Defendant Sol G. Atlas)

89.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.     Defendant Sol G. Atlas has violated Title VII by subjecting Mr. Lawrence to unlawful retaliation for his complaints of and opposition to Defendants' discriminatory and retaliatory practices enumerated above.

91.     As a direct and proximate result of Defendant Sol G. Atlas's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

92.     As a direct and proximate result of Defendant Sol G. Atlas's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

93.     Defendant Sol G. Atlas's unlawful retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

**(Discrimination and Harassment in Violation of NYSHRL)**

94.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 93, inclusive, as if fully set forth herein.

95.     Defendants have discriminated against and harassed Plaintiff on the basis of his race, color and/or national origin in violation of NYSHRL by denying him the same terms and conditions of employment available to employees who are not West Indian and/or Black, including, but not limited to, subjecting him to disparate working conditions, discipline and pay, and denying him the opportunity to work in an employment environment free of unlawful discrimination and harassment because he is West Indian and/or Black.

96.     Defendants have discriminated against Mr. Lawrence in violation of NYSHRL by, among other things, creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, widespread racism in the workplace that resulted in a material detriment to the terms and conditions of Mr. Lawrence's employment.

97.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Mr. Lawrence has suffered and continues to suffer monetary

and/or economic harm for which he is entitled to an award of monetary damages and other relief.

98.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

**AS AND FOR A  SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**

99.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.     Defendants have violated NYSHRL by subjecting Mr. Lawrence to unlawful retaliation for his complaints of and opposition to Defendants' discriminatory and retaliatory practices enumerated above.

101.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

102.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

19

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Aiding and Abetting Violations of NYSHRL)

103.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.    Defendants Peter Fidos and Sandra Atlas Bass knowingly and recklessly aided and abetted the unlawful employment practices and/or unlawful discrimination, harassment and retaliation against Mr. Lawrence in violation of the New York State Human Rights Law.

105.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief against Defendants Fidos and Bass in their official and individual capacities.

106.    As a direct and proximate result, Mr. Lawrence has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief against Defendants Fidos and Bass in their official and individual capacities.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Retaliation in Violation of FLSA)

107.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 106, inclusive, as if fully set forth herein.

108.    Defendants Sol G. Atlas and Fidos have violated the FLSA by subjecting Mr. Lawrence to unlawful retaliation for his participation in the DOL investigation and opposition to Defendants Sol G. Atlas's and Fidos's unlawful compensation practices enumerated above.

109.    As a direct and proximate result of Defendants Sol G. Atlas's and Fidos's unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

110.    Defendants Sol G. Atlas's and Fidos's unlawful retaliatory conduct constitutes a willful and wanton violation of the FLSA, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Retaliation in Violation of New York Labor Law)

111.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 110, inclusive, as if fully set forth herein.

112.    Defendants Sol G. Atlas and Fidos have violated the New York Labor Law by subjecting Mr. Lawrence to unlawful retaliation for his participation in the DOL investigation and opposition to Defendants Sol G. Atlas's and Fidos's unlawful compensation practices enumerated above.

113.    As a direct and proximate result of Defendants Sol G. Atlas's and Fidos's unlawful retaliatory conduct in violation of the New York Labor Law, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.       A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B.       An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.       An order directing Defendants to place Mr. Lawrence in the position he would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect Mr. Lawrence;

D.       An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Lawrence for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.       An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Lawrence for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

22

   F.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Lawrence for harm to his professional and personal reputations and loss of career fulfillment;

   G.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Mr. Lawrence in an amount to be determined at trial, plus prejudgment interest;

   H.  An award of punitive damages;

   I.  An award of costs that Mr. Lawrence has incurred in this action, as well as Mr. Lawrence's reasonable attorneys' fees to the fullest extent permitted by law; and

   J.  Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated: June 9, 2014
   Carle Place, New York


      GOODSTADT LAW GROUP, PLLC


      By:_____
       Andrew S. Goodstadt (AG-2760)

      One Old Country Road, Suite 347
      Carle Place, New York  11514
      Telephone: (516) 307-1880
      Facsimile: (516) 307-1879

      COUNSEL FOR PLAINTIFF