UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WINSTON LAWRENCE,

      Plaintiff,

 -against-           **MEMORANDUM & ORDER**
                  14-CV-3616 (DRH)(GRB)
SOL G. ATLAS REALTY CO., INC.,
PETER FIDOS, in his official and individual
capacities, and SANDRA ATLAS BASS, in
her official and individual capacities,

      Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**GOODSTADT LAW GROUP, PLLC**
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514
By: Andrew S. Goodstadt, Esq.

**JASPAN SCHLESINGER LLP**
Attorneys for Defendants
300 Garden City Plaza
Garden City, NY 11530
By: Stanley A. Camhi, Esq.
   Jessica M. Baquet, Esq.

**HURLEY, Senior District Judge:**

  Plaintiff Winston Lawrence ("plaintiff" or "Lawrence") commenced this employment discrimination action against defendants Sol G. Atlas Realty Co., Inc. ("Atlas"), Peter Fidos ("Fidos") and Sandra Atlas Bass ("Bass") (collectively "defendants") alleging discrimination and retaliation on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL"); also asserted are claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3) and the New York Labor Law ("NYLL"). Presently before the Court is defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint and considered true for purposes of this motion.

Atlas is a real estate and property management company that specializes in the rental and management of residential apartments. Compl. ¶ 15. Plaintiff, a West Indian/Black, has been employed by Atlas since April 1994 and at the time of the events at issue was employed as a porter and responsible for the overall maintenance and cleanliness of the interior and exterior of his assigned buildings and grounds in Atlas's Great Neck complex. *Id*. ¶¶ 16-18.

In July 2008, Fidos, a Caucasian/Polish-American was hired as superintendent of the Great Neck complex and became plaintiff's supervisor. *Id*. ¶ 21. Fidos engaged in a pattern of discriminatory treatment towards plaintiff and other West Indian and or Black porters. *Id*. ¶ 23. Among other things, Fidos hired almost exclusively Caucasian and/or Polish American employees, *id*.; made

2

disparaging remarks about Blacks and West Indians, *id*. ¶¶ 24, 28; subjected plaintiff and the other Black and/or West Indian porters to unequal treatment, scrutiny, discipline and harassment, *id*. ¶¶ 25-28, 31-38, 44-47. When plaintiff complained to Bass, Atlas' Chief Executive officer, she took no action. *Id*. ¶¶ 9, 49. In fact, in response to plaintiff's complaints to Bass and his EEOC complaint, Fidos retaliated by increasing the frequency of baseless discipline and write-ups, suspending plaintiff and docking his pay, and setting the time clock ahead to make it appear plaintiff was late. *Id*. ¶¶ 52-59.

Fidos also retaliated against plaintiff for participating in a Department of Labor's investigation of Atlas' failure to pay its employees for overtime by ostracizing plaintiff, threatening him, and subjecting him to increased scrutiny, discipline and write-ups. *Id*. ¶¶ 64-71.

On April 15, 2013 plaintiff filed a charge of discrimination with the EEOC. He commenced the present action after the EEOC issued a determination dated December 13, 2013 that there was probable cause to believe Atlas discriminated against him on account of his race and issued a right to sue letter. *Id*. ¶¶11-12. Plaintiff asserts claims for (1) discrimination and harassment in violation of § 1981 against all defendants; (2) retaliation in violation of § 1981 against all defendants; (3) discrimination and harassment in violation of Title VII against Atlas; (4) retaliation in violation of Title VII against Atlas; (5) discrimination and harassment in violation of the NYSHRL against all defendants; (6) retaliation in violation of the

3

NYSHRL against all defendants; and (7) aiding and abetting in violation of NYSHRL against Fidos and Bates.

## DISCUSSION

### I. Legal Standard - Motion to Dismiss

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the pleading standard applicable in evaluating a motion to dismiss under rule 12(b)(6).

The Court in *Twombly* disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are

4

no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting Twombly, 550 U.S. at 556-57) (internal citations omitted). In determining a motion to dismiss, a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## II. The Retaliation Claims Are Exhausted

Defendants move to dismiss Plaintiff's retaliation claims for failure to exhaust administrative remedies. Specifically, they maintain plaintiff's retaliation

5

claims are not alleged in the charge he filed with the EEOC, as well as that some are barred because they were not presented to the EEOC within 300 days of the underlying discriminatory acts.

As support for their argument that the retaliation claims were not presented to the EEOC, defendants rely on plaintiff's failure to check the retaliation box on the EEOC complaint form.

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (internal quotation marks omitted). However, a claim that was not presented to the EEOC may still be pursued where the claim is "reasonably related to the claims that were brought before the agency," meaning that "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (citations omitted). This doctrine applies where

> 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir.2003) (citation omitted).

In his EEOC complaint, plaintiff alleged that he was discriminated against by his employer because of his race once defendant Fidos was hired. That complaint goes on to set forth various instances in which Fidos treated plaintiff differently from Polish employees, as well as disparaging remarks made by Fidos, and that plaintiff complained of this conduct to defendant Bass who took no action.

The retaliation claim in the instant complaint is based on the following allegations. Unable to withstand Fidos' discriminatory treatment, plaintiff complained to defendant Bass. (Compl. ¶¶ 49-50.) Bass not only failed to take any action, she let Fidos increase his unlawful mistreatment with impunity. (*Id.* ¶ 51.) The adverse treatment became worse in response to such complaints and baseless write-ups became more frequent. (*Id.* ¶¶ 52-54.) After not receiving any relief, plaintiff filed his charge of discrimination with the EEOC. (*Id.* ¶ 55.) Despite the EEOC's finding that there is reasonable cause to believe plaintiff was discriminated against on account of his race, defendants have only increased their unlawful treatment of plaintiff. (*Id.* ¶¶ 57-60.)

Given the allegation in his EEOC complaint that he complained to Bass, it is reasonable to conclude that the EEOC would have been sufficiently alerted to explore the results of plaintiff's complaints to Bass, including any retaliation. *See Morris v. David Lerner Assoc.*, 680 F. Supp. 2d 430, 438 (E.D.N.Y. 2010) ("[E]ven if the ['retaliation'] box was not checked, the claim is still exhausted if the EEOC charge put the agency on notice as to the existence of such a claim."); *Stuevecke v.*

*N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, *5 (E.D.N.Y. Aug. 26, 2003) (same); *cf. Staten v. City of New York*, 2015 WL 4461688, * 15 (S.D.N.Y. July 20, 2015) ( "EEOC Intake Questionnaire would have sufficiently alerted the EEOC to each of Plaintiff's claims raised in this action.) Additionally, any retaliation based on the filing of plaintiff's EEOC complaint is deemed exhausted. *Donahue v. Finkelstein Memorial Library*, 987 F. Supp.2d 415, 426-27 (S.D.N.Y. 2013).

Turning then to defendants' argument that much of plaintiff's Title VII discrimination claim is subject to dismissal as many of the acts were not presented to the EEOC within 300 days of when they occurred, the Court finds it unavailing. "It has been the law of this Circuit that under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155–56 (2d Cir. 2012). Here, plaintiff has asserted both a course of discriminatory treatment and a hostile work environment which by "[their] very nature involves repeated conduct" and thus "can be a continuing violation." *Id*.

## III. Failure to State a Retaliation Claim

Defendants move to dismiss Plaintiff 's § 1981, New York State Human Rights Law, FLSA and New York Labor Law retaliation claims for failure to state a claim.

## A. The § 1981 and NYSHRL Retaliation Claims

Retaliation claims under § 1981 are generally analyzed in the same manner as under Title VII. *Acosta v. City of New York*, 2012 WL 1506954 at *8 (S.D.N.Y. Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability."). State claims of retaliation under the NYSHRL are analyzed under the same framework as federal claims. *See, e.g., Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F. Supp. 2d 261, 273 (E.D.N.Y. 2013).

"Section 704(a) of Title VII makes it unlawful to retaliate against an employee, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)). "In order to present a prima facie case of retaliation under Title VII . . . a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII, . . . [2] that the employer was aware of this activity, [3] the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action . . . ." *Kessler v. Westchester Cty. Dept. of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted).

What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related retaliatory acts and harm."); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law") (internal citations omitted). The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted). "A causal connection in retaliation claims can be shown either (1) indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015).

Plaintiff has stated a retaliation claim against Atlas and Fidos. According to the Complaint, after he complained to Bass, the adverse treatment escalated in that "baseless write-ups by Fidos increased, and he suspended plaintiff, docked his pay and threatened him with termination. Given the allegation of an escalation in Fidos' conduct shortly after the complaint to Bass, it is plausible to conclude at the pleading stage that Fidos was aware of the complaint. *See Littlejohn*,795 F.3d at

10

319-20 ("allegations in the complaint need only give plausible support" to retaliation claim).

The allegations against Bass, however, fail to state a retaliation claim as they do not show that Bass was personally involved in the retaliation. *See Patterson v. Cnty. of Oneida,* 375 F.3d 206, 229 (2d Cir. 2004) (individual may be held liable under § 1981 only if that individual is personally involved in the alleged deprivation). Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004). While the complaint alleges that plaintiff informed Bass of the initial discriminatory conduct, there are no allegations that he made her aware of the escalation in Fidos' conduct after his complaint to her or after the filing of his EEOC complaint. Accordingly, the § 1981 retaliation claim against Bass is dismissed, with leave to replead.

### B. The FLSA and NYLL Retaliation Claims

As to the FLSA and New York Labor Law claims of retaliation, defendants argue that no claim has been stated given the absence of adverse action and because

11

plaintiff's allegations that he participated in the Department of Labor investigation and that he was retaliated against for cashing the overtime checks issued as a result of the investigation are insufficient.

The FLSA provides in pertinent part:

> [I]t shall be unlawful for any person -
> . . .
> (3) to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215 (a)(3).[1]

Section 215(a)(3) was enacted by Congress to "prevent [] fear of economic retaliation from inducing workers quietly to accept substandard conditions." *Kasten v. Saint-Gobain Perf. Plastics Corp.*, – U.S. –, 131 S. Ct. 1333 (2011). The Second Circuit has "repeatedly affirmed that the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathouse v. JHS Sec. Inc.* 784 F.3d 105, 113-14 (2d Cir. 2015) (internal quotation marks omitted). Thus "testify" as used in the

---

[1] The elements of New York Labor Law § 215 retaliation claims are, as defendant concedes, "not as limited as those of a FLSA retaliation claim." Defs.'s Mem. at 22. "In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result. . . . An informal complaint to an employer that the employer is violating a provision of the Labor Law suffices." *Laboy v. Office Equipment & Supply Corp.*, 2016 WL 5462976, *7 (E.D.N.Y. Sept. 29, 2016).

statute should be broadly construed to include participation in an investigation by the DOL. *Cf. Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 879 (2d Cir. 1988) (noting courts "have not hesitated to apply the protection [of the FLSA] to activities less directly connected to formal proceedings where retaliatory conduct has a similar chilling effect on employees' assertion of rights").

Additionally, the assertion that plaintiff was retaliated against for cashing the overtime check received as a result of the DOL investigation falls within the protection of the FLSA's retaliation protection. "Protection against discrimination for instituting FLSA proceedings would be worthless if an employee could be [retaliated against] for declining to give up the benefits he is due under the Act." *Brock*, 839 F.2d at 879.

Finally, the complaint does indeed allege adverse action. As a result of plaintiff's opposition to Fidos' threats of termination if the overtime checks were cashed, plaintiff "was further ostracized, further threatened and exposed to other acts of unlawful retaliation, including, but not limited to, additional write ups and increased scrutiny." Compl. ¶ 70. Defendants assertion that "attributing the treatment Plaintiff complains about as being a result of his participation in the DOL investigation would be inconsistent with his allegation that he was discriminated against because he is a West Indian/Black male," [Debs.'s Mem. in Supp. at 17] is underwhelming. Pleading alternative theories of liability is permissible.

The motion to dismiss the retaliation claims asserted pursuant to the FLSA, and the New York Labor Law is denied.

## CONCLUSION

The § 1981 and New York Human Rights Law Retaliation claims against Bass are dismissed with leave to replead with twenty (20) days of the date hereof; the motion to dismiss is otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York  　　　　　　　　　s/ Denis R. Hurley
　　　December 16, 2016  　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge